[No. 16219. Department Two. March 23, 1921.]

EDWARD THOMPSON COMPANY, *Appellant,* v. J. R. DILLON, *Respondent.*[1]

APPEAL AND ERROR (418)—REVIEW—FINDINGS. A finding by the trial court that appellant had directed the return of law books conditionally sold to respondent, held to be sustained by a preponderance of the evidence.

SALES (182)—CONDITIONAL SALES—REMEDIES OF SELLER—ELECTION. On a conditional sale of law books retaining title in seller until paid for in full and giving the purchaser the option to cancel the contract after payment of $100, the purchaser's right to elect to return the books after making payments in excess of that sum, would not be defeated where the further payments had been made with the understanding between the parties that he reserved the option to return the books.

Appeal from a judgment of the superior court for King county, Clifford, J., entered May 1, 1920, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

*A. H. Wiseman,* for appellant.

*J. Richard Dillon,* for respondent.

PARKER, C. J.—The plaintiff, Edward Thompson Company, seeks recovery from the defendant Dillon of the sum of $236 and interest thereon, which it claims as a balance due upon the purchase price of certain law books sold by it to the defendant. A trial upon the merits in the superior court for King county sitting without a jury, resulted in findings and judgment in favor of the defendant denying to the plaintiff any recovery; from which the plaintiff has appealed to this court.

On October 29, 1907, at Seattle, the respondent Dillon signed and gave to the appellant company an order

[1]Reported in 196 Pac. 579.

for the purchase of certain law books, the order being partly printed and partly written, evidently made out on one of appellant's stereotyped order forms. The contract so evidenced specified the total purchase price as $426, payable $10 cash and the balance in quarterly installments commencing on April 1, 1908, to wit: four installments of $10 each; four of $15 each; eight of $20 each; five of $25 each; and a final one of $31. While these installments were evidenced by ordinary promissory notes signed by respondent, it is conceded that the notes were not accepted in payment of the installments, but only as further evidence of their amounts. In the body of the contract we read:

"It is expressly understood that the right of property in all volumes unpaid for shall remain in Edward Thompson Company until the same are wholly paid for, . . ."

On the back of the order, and conceded to be a part of the contract, there were, at the time of its execution, indorsed these words:

"After payment of $100 on the within contract, subscriber may return books if they so desire and be fully released from all obligation under this contract."

Soon after the making of this contract, the books were delivered by appellant to respondent. On April 27, 1912, respondent had paid upon the purchase price installments aggregating only $85, the collection of the balance of the purchase price in the meantime having been placed by appellant in the hands of Mr. Stephanus, an attorney of Seattle. On that day, Stephanus as appellant's attorney having previously made demands upon respondent for payment, respondent wrote to him inclosing a payment of $15, bringing the payments up to $100 in the aggregate, respondent claiming in the letter that he then had the right under

the terms of the contract to return the books and be fully released from all further obligations under the contract. He did not however then unqualifiedly elect to return the books with a view of unconditionally terminating the contract, but concluded his letter as follows:

"In thinking the matter over, I have come to the conclusion that if you are agreed I will keep the books, pay for them by taking up a note every three months as in the first instance agreed, i. e., allow the fifteen dollar check to apply on the last note of that denomination and on the 1st of July take up the first of the $20 notes."

This he seems to have regarded as an alternative proposition of having appellant then take back the books and thus end the contract, or of keeping the books under the terms of the contract as originally made, except as to the times of paying the $20, $25 and $31 installments. On May 21, 1912, appellant's attorney answered respondent's letter of April 27, 1912, as follows:

"Allow me to state that I just received a letter from Edward Thompson Company saying that it is agreeable to them to have you make the payments as outlined in your letter which I forwarded to them some time ago. They say:

" 'While a large part of the indebtedness is overdue, we beg to say that if he is willing to pay you upon presentation one of the notes each three months, without fail, that arrangement will be satisfactory to us.' "

Thereafter respondent made payments of installments as follows: $20 on June 7, 1912; $20 on September 26, 1912; $20 on December 24, 1912; and $20 on March 27, 1913; thus making the aggregate of all payments $180. Respondent has at all times since then declined to make any further payments. A few months thereafter, soon after the time the next installment

fell due under the new agreement between them as to the falling due of the installments, appellant's attorney urged payment of such installment and later urged payment of the other installments. Touching the demands for such payments and respondent's claimed exercise of his option to return the books, he testified as follows:

"Q. Did Mr. Stephanus ever call upon you and demand any payment of the balance due, or claimed balance due? A. Yes, sir, many times. Q. Will you state to the court what the tenor of that conversation was at all times? A. . . . I always offered to return the books to Mr. Stephanus, or to the Edward Thompson Company, or wherever they wanted them; and Mr. Stephanus told me he did not want them in his office, and he said the Edward Thompson Company did not want them. I told him I did not want them. . . . Q. About the time you were getting ready to go into the army service, what did you do with the books? A. Well, prior to that I took the books to my residence where I was living at 4245 Greenwood, it being 4245 Greenwood Avenue, and I stored them there in the basement. They were in my way, and one evening Mr. Stephanus called me on the 'phone and said that he had called at my office, but I was not in; and he also had noticed the law books were gone, and wanted to know where they were; and I told him I had stored them in my basement at that time, but that he could get them whenever he wanted them; and then he wanted to know why I did not send them back to the Edward Thompson Company; and I told him I would be glad to do it, and I had been offering to do it; and it would save any further trouble; and I would send them, and he said all right. I think that was the end of the conversation, and after that I did send them."

The books were shipped by respondent to appellant on November 13, 1918. This is respondent's version of his attitude communicated to appellant's attorney on the question of his exercise of, and right to exercise,

the option of having appellant take the books back, covering the whole of the period from shortly following the making of the last payment by him in March, 1913, up to the time of shipping the books to appellant on November 13, 1918. Appellant's attorney, Stephanus, in his testimony denies that he in any manner authorized the return of the books by respondent to appellant. The trial judge found, among other things:

"That upon the payment of $100 as provided in said contract the said defendant offered to return the said books to the said plaintiff and repeatedly made this offer to plaintiff's attorney and representative C. J. Stephanus, up to or about the month of October, 1918, when at this time the said attorney and representative of said plaintiff directed the said defendant to return the said books to the said plaintiff at Northport, Long Island, New York."

While the evidence as above noticed is in conflict touching the fact of respondent returning the books to appellant at the instance of Stephanus, its attorney, we cannot see our way clear to hold that it preponderates against the conclusion so reached by the trial judge. We note that the testimony of appellant's attorney does not render it very clear whether he disputes that of respondent touching the offer, and continuation thereof, made by respondent to return the books soon after the making of the last payment in March, 1913.

Counsel for appellant argues that the option given to respondent by the terms of the original contract, to have appellant take back the books and render him free from further liability after the payment of the $180 upon the purchase price, cannot be invoked by him at this late day. It seems to us that, in view of the understanding arrived at between the parties when they agreed upon postponing the dates of the maturing

of the several unpaid installments, in the spring of 1912, they did so with a view of preserving all of respondent's rights under the contract, including his right of election to have appellant take back the books; and that respondent's election, after the payment of $180, to have appellant take back the books, was timely made; it being made within a few months after the making of the last payment by him in March, 1913, at a time when respondent was in arrears but a short time in the payment of but one installment. This renders it unnecessary to rest our holding in respondent's favor wholly upon a direction by appellant's attorney to respondent in November, 1918, to send the books back to appellant; though that fact we think weighs against appellant as a construction on its part of the contract and respondent's rights thereunder.

We conclude that the judgment must be affirmed.

MOUNT, MAIN, MITCHELL, and TOLMAN, JJ., concur.